**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. CR15-4051-MWB |
| vs. | |
| ELIZABETH LOPEZ, | **MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION FOR JUDGMENT OF AQUITTAL AND NEW TRIAL** |
| Defendant. | |

_____

## I.   INTRODUCTION AND BACKGROUND

Before me is defendant Elizabeth Lopez's Motion for Judgment of Acquittal or New Trial (docket no. 91). On August 20, 2015, an Indictment was returned against Lopez, charging her with conspiring to distribute 500 grams or more of a methamphetamine mixture which contained 50 grams or more of pure methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, and possessing with intent to distribute methamphetamine mixture which contained 5 grams or more of pure methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). Her jury trial began on May 25, 2016. On May 26, 2016, the jury returned a verdict in which it found Lopez guilty on both counts.

Lopez then requested, and I granted, an extension of time to file her post-trial motions. Lopez subsequently filed the motion for judgment of acquittal, pursuant to Federal Rule of Criminal Procedure 29(c), or, in the alternative, a motion for a new trial, pursuant to Federal Rule of Criminal Procedure 33 that is currently before me. She argues for a judgment of acquittal on the ground that there was insufficient evidence introduced

at trial to support her convictions on the charged offenses. She also contends that the prosecution failed to establish that venue was proper in the Northern District of Iowa. The prosecution filed a timely resistance to Lopez's motion.

## II. LEGAL ANALYSIS

In deciding Lopez's motion, I apply the required standards for consideration of a motion for judgment of acquittal, *see* FED. R. CRIM. P. 29, and a motion for new trial, *see* FED. R. CRIM. P. 33, which I articulated in *United States v. Ortiz*, 40 F. Supp. 2d 1073, 1079, 1082 (N.D. Iowa 1999). The prosecution contends that the evidence introduced at trial, when viewed in the light most favorable to the guilty verdict and granting all reasonable inferences supported by that evidence, supports the jury's finding Lopez guilty of the charged offenses. I agree.

The prosecution offered the testimony of two cooperating witnesses, Joshua Navrkal and Tonya Cole-Cabrera. Navrkal testified that Lopez had delivered methamphetamine to him and Cole-Cabrera eight to twelve times. *See* Trial TR at 303, 310-16. Navrkal estimated that, during these transactions, Lopez had delivered a total of about one pound of methamphetamine. *See* Trial TR at 316. Navrkal also testified that Lopez usually delivered 1 or 2 ounces of methamphetamine, but had delivered 4 ounces one time and six to seven ounces on another occasion. *See* Trial TR at 316-17. Navrkal further explained that he did not request specific amounts of methamphetamine to be delivered, but that after he called Lopez, she would show up with ounces of methamphetamine. *See* Trial TR at 312-14. Navrkal and Lopez would make arrangements to meet and then Lopez would make delivery of the methamphetamine to Navrkal and/or Cole-Cabrera. *See* Trial TR at 312-14. Cole-Cabrera's testimony corroborated aspects of Navrkal's testimony. Cole-Cabrera testified that she and Navrkal, her boyfriend, obtained methamphetamine from Lopez eight to ten times. Cole-Cabrera further testified about a series of text messages between Lopez and her which discussed wire transfers of money, $1,400, to Lopez as

payment for a drug debt. *See* Trial TR at 312-14. Accordingly, based the evidence presented at trial, the jury could have reasonably concluded that the prosecution had established each of the elements of the charged offenses.

Lopez's venue argument also fails. "Proper venue is required by Article III, section 2 of the United States Constitution, the Sixth Amendment, and Rule 18 of the Federal Rules of Criminal Procedure." *United States v. Jaber*, 509 F.3d 463, 465 (8th Cir, 2007); *see United States v. Morales*, 445 F.3d 1081, 1084 (8th Cir. 2006); *United States v. Romero*, 150 F.3d 821, 824 (8th Cir. 1998). The prosecution bears the burden of proving that venue is proper. *See United States v. Bascope-Zurita*, 68 F.3d 1057, 1062 (8th Cir. 1995); *United States v. Delgado*, 914 F.2d 1062, 1064 (8th Cir. 1990); *United States v. Netz*, 758 F.2d 1308, 1312 (8th Cir. 1985); *United States v. Black Cloud*, 590 F.2d 270, 272 (8th Cir. 1979). "'Proof of venue is an essential element of the [g]overnment's case. It may be established either by direct or circumstantial evidence. . . . [U]nlike other elements of a crime which must be proved beyond a reasonable doubt, venue need only be proved by a preponderance of the evidence.'" *Netz*, 758 F .2d at 1312 (quoting *United States v. Massa*, 686 F.2d 526, 527–28 (7th Cir. 1982)).

I note that the prosecution failed to introduce any evidence that Sioux City, where Navrkal and Cole-Cabrera testified that Lopez distributed methamphetamine as part of the charged conspiracy, is in the Northern District of Iowa. Moreover, there was no stipulation concerning venue. The prosecution clearly flunked first year criminal procedure by failing to offer evidence of venue which could have been accomplished by simply asking witnesses if Sioux City was in the Northern District of Iowa. Nonetheless, the prosecution met its burden of establishing proper venue by a preponderance of the evidence. The prosecution's evidence, when viewed in the light most favorable to the verdict and granting all reasonable inferences supported by that evidence, established that at least one drug transaction, that was part of the charged conspiracy, occurred in Sioux City, Iowa.

A district court may take judicial notice that venue is proper in a particular district.[1] *See United States v. Males*, 715 F.2d 568, 569-70, n. 2 (11th Cir. 1983) (holding that although there was no direct testimony that the crime occurred in Dade County, Florida, venue was established because there were sufficient references to the crime taking place in Miami, and concluding that court could take judicial notice of Miami's location in Dade County): *see also United States v. Pierre*, 525 Fed. App'x 237, 239 (4th Cir. 2013); *United States v. Canon*, 420 Fed. App'x 398, 399 (5th Cir. 2011); *United States v. Kelly*, 535 F.3d 1229, 1235–36 (10th Cir. 2008); *United States v. Troupe*, 307 Fed. App'x 715, 717 (4th Cir. 2008); *United States v. Greer*, 440 F.3d 1267, 1272 (11th Cir. 2006); *United States v. Ofarri-Figureoa*, 15 Fed. App'x 360, 364 (7th Cir. 2001); *United States v. Lavender*, 602 F.2d 639, 641 (4th Cir. 1979); c*f. United States v. Trenary*, 473 F.2d 680, 682 (9th Cir. 1973) ("Appellants argue that the Southern District of California did not have venue over the conspiracy count because there was no direct proof that the co-conspirators in driving from Newport Beach to Mexico in furtherance of the conspiracy, passed through that district. . . . Judicial notice may be taken of a map of the area and, considering the time factor, the distance covered and the probable source of the marijuana, it was more reasonable than not that the two drove the car along the coast, by the shortest direct route to reach Mexico.").

---

[1]Federal Rule of Evidence 201 permits a district court to take judicial notice at any stage of the proceeding, whether or not requested by the parties, of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201. "'[Geography has long been peculiarly susceptible to judicial notice for the obvious reason that geographic locations are facts which are not generally controversial and thus it is within the general definition contained in Fed. R. Evid. 201(b). . . .'" *United States v. Bello*, 194 F.3d 18, 23 (6th Cir. 1999) (quoting *United States v. Piggie*, 622 F.2d 486, 488 (10th Cir. 1980); *see United States v. Blunt*, 558 F.2d 1245, 1247 (6th Cir. 1977)).

Because the crime charged here was a conspiracy, it is black letter law in this circuit that venue is proper "in any district where *any* conspirator commits an overt act, even if other conspirators were never physically present in that district." *United States v. Nguyen*, 608 F.3d 368, 374 (8th Cir. 2010) (emphasis in original); *see also United States v. Morales,* 445 F.3d 1081, 1084 (8th Cir. 2006); *United States v. Hull*, 419 F.3d 762, 768-69 (8th Cir. 2005); *United States v. Cordova*, 157 F.3d 587, 597 (8th Cir. 1998); *United States v. Romero*, 150 F.3d 821, 824 (8th Cir. 1998); *United States v. Fahnbulleh*, 748 F.2d 473, 477 (8th Cir. 1984). Accordingly, in this case, the prosecution was required to show, by a preponderance of the evidence, that one member of the conspiracy committed an overt act in the Northern District of Iowa. The prosecution met its burden by presenting evidence that co-conspirators distributed methamphetamine, as part of the charged conspiracy, in Sioux City, Iowa. Sioux City is located in Woodbury County. Thus, the jury could reasonably infer that an overt act in furtherance of the conspiracy took place in Woodbury County, Iowa. The Iowa counties making up the Northern District of Iowa are set out in 28 U.S.C. § 95(a). Section 95(a) specifies that Woodbury County is located in the Northern District of Iowa. Accordingly, I take judicial notice that Woodbury County is located in the Northern District of Iowa. Because an overt act in furtherance of the conspiracy occurred in Sioux City, and Sioux City is located in the Northern District of Iowa, venue was proper in the Northern District of Iowa. *See United States v. Hatchett*, 31 F.3d 1411, 1424 (7th Cir. 1994) (holding that the court did not err in determining that the prosecution had established proper venue by showing that drug transactions occurred in city that was located in district); *United States v. Males*, 715 F.2d 568, 569-70, n. 2 (11th Cir. 1983) (holding that, although there was no direct testimony that the crime occurred in Dade County, Florida, venue was established because there were sufficient references to the crime taking place in Miami, and concluding that court could take judicial notice of Miami's location in Dade County). Accordingly, Lopez's Motion for Judgment of Acquittal is denied.

Lopez, alternatively, argues that I should grant a new trial because the verdict is contrary to the weight of the evidence. She contends that cooperating witnesses' credibility was so weak that the jury's reliance on their testimony constitutes "a serious miscarriage of justice." My obligation in ruling on a motion for new trial brought on the ground that the verdict is against the weight of the evidence is substantially different than my obligation in ruling on a motion for judgment of acquittal. *See United States v. Ruiz*, 105 F.3d 1492, 1501 (1st Cir. 1997) ("A district court's power to order a new trial is greater than its power to grant a motion for acquittal."). To resolve a motion for new trial, I must weigh the evidence and evaluate the credibility of the witnesses to determine if a miscarriage of justice may have occurred. *See United States v. Davis*, 103 F.3d 660, 668 (8th Cir. 1996). A miscarriage of justice, however, "occurs when the verdict 'is against the great weight of the evidence.'" *United States v. Malloy*, 614 F.3d 852, 862 (8th Cir. 2010) (quoting *Boesing v. Spiess*, 540 F.3d 886, 890 (8th Cir. 2008)). That standard has not been met here. I find that the cooperating witnesses' testimony at trial was sufficiently buttressed by corroborative evidence that the jury could reasonably rely upon it. Notably, Lopez was found to have one ounce of pure methamphetamine hidden in her bra at the time of her arrest, but no user paraphernalia. Significantly, these drugs were seized from Lopez after Navrkal ordered methamphetamine from his source, a woman he knew as the "Omaha Mexican Lady." Moreover, the amount of methamphetamine seized from Lopez was consistent with Navrkal's testimony that Lopez typically made one or two ounce deliveries of methamphetamine to him. The prosecution also presented text messages that the cooperating witnesses had received and sent to Lopez. The cooperating witnesses explained that these text messages concerned methamphetamine deliveries from Lopez and the collection of money for these deliveries. Consequently, after evaluating all the evidence and, applying the less restrictive standard for review applicable to motions for new trial, I find no reason to disturb the jury's verdict for being against the weight of the evidence. Therefore, Lopez's alternative motion for new trial is denied.

### III. CONCLUSION

For the reasons discussed above, Lopez's Motion for Judgment of Acquittal or New Trial is denied.

**IT IS SO ORDERED**.

**DATED** this 15th day of August, 2016.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA